LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JUAN JOSE GUTIERREZ, an individual.
Plaintiff,

v.

United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive,

Defendants.

**Case No.:  2:26-cv-5646**

**COMPLAINT FOR DAMAGES**
 1. **False Arrest/ False Imprisonment**
 2. **Assault and Battery**
 3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**
 4. **Intentional Infliction of Emotional Distress of Plaintiff**
 5. **Violation of Civil Rights (*Bivens* Action)**
 6. **Conspiracy to Commit Civil Rights Violations (*Bivens* Action)**
 7. **Fourth Amendment – Unlawful Detention and Arrest (*Bivens* Action)**
 8. **Fourth Amendment -- Excessive Use of Force (*Bivens* Action)**
 9. **Fifth Amendment – Denial of liberty without due process of law (*Bivens* Action)**

**DEMAND FOR JURY TRIAL**

1

COMPLAINT FOR DAMAGES

**COME NOW**, Plaintiff **JUAN JOSE GUTIERREZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises directly under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.      This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.      This civil rights and state tort action arises out of Plaintiff's unlawful detention, restraint, and mistreatment by federal agents at Los Angeles International Airport.

6.      Plaintiff alleges that Defendants violated his constitutional rights by

COMPLAINT FOR DAMAGES

detaining him without reasonable suspicion or probable cause, using excessive force, and depriving him of his liberty without due process of law, despite Plaintiff's full compliance and presentation of valid identification, including a United States passport confirming his citizenship.

7.    Plaintiff further alleges that Defendants' conduct included unlawfully detaining him for an extended period of time, placing him in tightly applied handcuffs, moving him between rooms, and restraining him to a chair or bench for approximately three hours, all without lawful justification.

8.    Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated, at least in part, by racial profiling and discriminatory intent, including treating Plaintiff differently based on his race, ethnicity, and/or perceived national origin.

9.    The policies, practices, and customs underlying Defendants' conduct, including the failure to properly verify identity following facial recognition errors, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10.    Plaintiff asserts claims based on Defendants' violations of his rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11.    Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

## PARTIES

12.    At all times relevant, Plaintiff JUAN JOSE GUTIERREZ (Hereinafter "Plaintiff" or "GUTIERREZ"), a U.S. citizen, was an individual residing in the City of

3

COMPLAINT FOR DAMAGES

Los Angeles.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants

COMPLAINT FOR DAMAGES

DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18.     At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19.     Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20.     At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

### FACTUAL ALLEGATIONS

21.     Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22.     Plaintiff GUTIERREZ is a United States Citizen of Latino descent, living in the City of Los Angeles in California. GUTIERREZ was born in Mexico and was naturalized as a U.S. citizen in 1985.

23.     On or about November 27, 2025, GUTIERREZ was flying back from Mexico City and arrived at Los Angeles International Airport ("LAX").

24.     Upon arrival, GUTIERREZ proceeded to the facial recognition processing line. Federal agents informed GUTIERREZ that the facial recognition

COMPLAINT FOR DAMAGES

system failed to recognize him and directed him to a secondary inspection area.

25.    GUTIERREZ provided federal agents with his valid California driver's license and United States passport. Despite this valid identification, federal agents claimed they were unable to verify GUTIERREZ's identity. GUTIERREZ repeatedly informed agents that he is a United States citizen.

26.    Notwithstanding GUTIERREZ's valid identification and statements of citizenship, federal agents refused to allow GUTIERREZ to leave the airport. GUTIERREZ was detained, handcuffed, and moved between rooms within the LAX terminal.

27.    During this detention, federal agents handcuffed GUTIERREZ to a chair or bench for approximately three hours. The handcuffs were applied excessively tightly, causing GUTIERREZ physical pain and injury.

28.    Federal agents fingerprinted GUTIERREZ and continued to disregard his valid identification and repeated assertions of United States citizenship. At no time was GUTIERREZ suspected of committing any crime, nor had he committed any crime. GUTIERREZ fully complied with all arrival procedures and provided proper travel documentation.

29.    Federal agents lacked any evidence, reasonable suspicion, or probable cause to detain, restrain, or handcuff GUTIERREZ. Defendants' actions deprived GUTIERREZ of his liberty and freedom of movement without lawful justification while he was lawfully entering the United States. The detention was unreasonably prolonged, lasting approximately three hours, despite Defendants having access to readily available information confirming GUTIERREZ's identity and United States citizenship.

30.    As a direct and proximate result of Defendants' conduct, GUTIERREZ suffered physical pain, injury, humiliation, and severe emotional distress. Defendants' conduct was intentional, reckless, and undertaken without legal justification.

31.    Defendants' actions, including the detention, handcuffing, fingerprinting,

COMPLAINT FOR DAMAGES

and disregard of GUTIERREZ's proof of citizenship, were carried out by agents of DHS, including ICE, CBP, and other federal agents present at LAX. These agents acted without lawful basis and in violation of GUTIERREZ's civil and constitutional rights, including through acts of unlawful detention and unconstitutional profiling.

32.    Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

33.    DHS adopted the three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

34.    These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

35.    The administration's stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.[1]

36.    The 3,000-arrests-per-day quota is the "minimum" goal.[2]

37.    "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[3]

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-

COMPLAINT FOR DAMAGES

38. The administration's directive to Secretary Noem and ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

39. To meet the 3,000-daily-arrest quota, the administration has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

40. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

41. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

42. The Secretary of Homeland Security has statutory authority to "confer or

respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

COMPLAINT FOR DAMAGES

impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a).

43.    On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

44.    Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

45.    By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrest Over Targeted Enforcement**

46.    Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

47.     But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance.

48.    The policy became useless, according to former immigration officials,

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

49. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem have directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

50. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

51. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9]

**B. United Farm Workers**

52. Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

53. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

54.  The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status.

55.  Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

56.  Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

57.  GUTIERREZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months after it was filed. 28 U.S.C. § 2675(a).

### FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

58.  Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

59.   Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

60.  Defendants detained Plaintiff without reasonable suspicion and without probable cause.

11

COMPLAINT FOR DAMAGES

61. Plaintiff did not knowingly or voluntarily consent to the detention or restraint.

62. Defendants detained Plaintiff for an unreasonable period of time, within Los Angeles International Airport following a facial recognition mismatch. Despite Plaintiff providing valid identification, including a United States passport and California driver's license, and repeatedly informing Defendants that he is a United States citizen, Defendants continued to detain him.

63. During this detention, Defendants placed Plaintiff in handcuffs, moved him between rooms, and restrained him to a chair or bench for approximately three hours.

64. Defendants' conduct in detaining and restraining Plaintiff was undertaken without any lawful justification.

65. The conduct of Defendants was a substantial factor in causing harm to Plaintiff.

66. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages.

67. The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages.

68. Defendants are liable for Plaintiff's injuries because they were integral participants in the wrongful detention and/or failed to intervene to prevent these violations.

69. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

70. Plaintiff further seeks punitive damages against the individual DOE Defendants.

COMPLAINT FOR DAMAGES

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

71.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

72.    Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

73.    Defendants, among other things, detained Plaintiff without lawful justification, placed Plaintiff in handcuffs, applied the handcuffs excessively tightly, moved Plaintiff between rooms, and restrained Plaintiff to a chair or bench for approximately three hours.

74.    The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

75.    The excessively tight handcuffing and prolonged restraint caused Plaintiff physical pain and injury, including pain to his wrists and hands.

76.    Defendants had no lawful basis to use force against Plaintiff, and the force used was unreasonable and excessive under the circumstances.

77.    Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants, and/or failed to intervene to prevent the unlawful conduct despite having a realistic opportunity to do so.

78.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

79.    The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

80.    Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

COMPLAINT FOR DAMAGES

81.    Plaintiff further seeks punitive damages against the individual DOE Defendants.

### THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

82.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

83.    California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

84.    Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

85.    Defendant's acts included, but were not limited to: unlawfully detaining Plaintiff; placing Plaintiff in handcuffs; applying the handcuffs excessively tightly; moving Plaintiff between rooms; restraining Plaintiff to a chair or bench for approximately three hours; and otherwise, restricting Plaintiff's freedom of movement without lawful justification.

86.    The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

87.    Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

88.    Defendants acted intentionally, knowingly, and with reckless disregard

14

COMPLAINT FOR DAMAGES

for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

89. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

90. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

91. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

92. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

93. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

94. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

95. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

96. Defendants' conduct included, but was not limited to: unlawfully detaining Plaintiff without reasonable suspicion or probable cause; disregarding Plaintiff's valid identification and proof of United States citizenship; placing Plaintiff in tightly applied handcuffs; moving Plaintiff between rooms; and restraining Plaintiff to a chair or bench for approximately three hours without lawful justification.

97. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff repeatedly informed them of his identity and citizenship and fully complied with all instructions.

98. Defendants' conduct was intentional, reckless, and carried out with a

conscious disregard for Plaintiff's rights and well-being.

99.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including humiliation, anxiety, fear, and mental anguish.

100.    Plaintiff also suffered physical manifestations of emotional distress, including pain and discomfort resulting from the excessively tight handcuffing and prolonged restraint.

101.    The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

102.    Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts.

103.    Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

104.    Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights

(By Plaintiff against all Defendants)

105.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

106.    This cause of action is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

107.    Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's

clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a. unlawfully detaining Plaintiff without reasonable suspicion or probable cause for an unreasonable amount of time;

    b. failing to properly verify Plaintiff's identity and United States citizenship despite presentation of valid identification;

    c. prolonging Plaintiff's detention without lawful justification;

    d. placing Plaintiff in handcuffs and applying them excessively tightly;

    e. restraining Plaintiff to a chair or bench for an extended period of time;

    f. using unnecessary and excessive force under the circumstances;

    g. failing to use reasonable alternatives to detention and restraint;

    h. failing to adequately assess that Plaintiff posed no threat and was fully compliant;

    i. failing to properly train and supervise agents regarding lawful detention and use of force;

    j. failing to ensure proper procedures for addressing facial recognition errors; and

    k. negligently communicating and coordinating information among agents during the incident.

108. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

109. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

110. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

17

COMPLAINT FOR DAMAGES

111. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

112. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

113. This cause of action is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under Bivens is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

114. Defendants, including agents of the DHS, ICE, CBP, and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

115. In furtherance of this agreement, Defendants acted in concert to remove Plaintiff from the normal processing line at Los Angeles International Airport, disregard Plaintiff's valid identification and proof of United States citizenship, detain Plaintiff for an extended period of time, place Plaintiff in handcuffs, move Plaintiff between rooms, and restrain Plaintiff to a chair or bench for approximately three hours.

116. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

117. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not

COMPLAINT FOR DAMAGES

by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

118. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

119. The decision to continue Plaintiff's detention despite clear evidence of his identity and citizenship, including a valid United States passport, further demonstrates that Defendant's actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

120. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of his constitutional rights.

121. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

122. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

123. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

124. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

125. Plaintiff further seeks punitive damages against the individual DOE

COMPLAINT FOR DAMAGES

Defendants.

## SEVENTH CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendants)

126. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

127. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

128. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

129. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and fully complied with all lawful entry procedures.

130. Despite Plaintiff's presentation of valid identification, including a United States passport and California driver's license, and his repeated statements confirming his United States citizenship, Defendants unlawfully prolonged Plaintiff's detention without justification.

131. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force, including placing him in tightly applied handcuffs and restraining him to a chair or bench for approximately three hours, causing physical pain and injury.

132. Defendants' conduct, including the detention, handcuffing, fingerprinting, and continued restraint of Plaintiff, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

COMPLAINT FOR DAMAGES

133. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

134. Upon information and belief, Defendants DOES 1-20 acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

135. These policies, practices, and customs included, but were not limited to: (a) detaining individuals without reasonable suspicion or probable cause following facial recognition errors; (b) failing to implement adequate procedures to verify United States citizenship using valid identification; and (c) permitting the use of unnecessary and excessive restraints, including prolonged handcuffing, absent any legitimate law enforcement justification.

136. Defendants DOES 1-20 knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

137. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

138. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

139. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

140. Plaintiff further seeks punitive damages against the individual DOE Defendants.

///

///

21

COMPLAINT FOR DAMAGES

## EIGHT CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendants)

141. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

142. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during his detention at Los Angeles International Airport.

143. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

144. Notwithstanding the absence of any legitimate law enforcement need, Defendants placed Plaintiff in handcuffs, applied the handcuffs excessively tightly, and restrained Plaintiff to a chair or bench for approximately three hours.

145. The excessively tight handcuffing caused Plaintiff physical pain and injury to his wrists and hands. The prolonged restraint significantly increased the severity of the force used.

146. Defendants' use of force, including prolonged and painful handcuffing, was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

147. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

148. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

COMPLAINT FOR DAMAGES

149.   As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

150.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages.

151.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

152.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of liberty without due process of law**

(By Plaintiff against all Defendants)

153.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

154.   The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

155.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

156.   Defendants deprived Plaintiff of his liberty by detaining and restraining him at Los Angeles International Airport for approximately three hours, without probable cause, reasonable suspicion, or any lawful basis.

157.   During this detention, Defendants restricted Plaintiff's freedom of movement, placed him in handcuffs, moved him between rooms, and prevented him from leaving the airport despite his compliance and presentation of valid identification.

158.   Defendants deprived Plaintiff of property by seizing and retaining his personal belongings during the detention without lawful justification.

COMPLAINT FOR DAMAGES

159. Defendants arbitrarily prolonged Plaintiff's detention despite having readily available information confirming Plaintiff's identity and United States citizenship, including a valid United States passport and California driver's license.

160. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

161. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

162. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

163. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain him despite clear evidence of his identity and citizenship.

164. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

165. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

166. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

167. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

168. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

169. Plaintiff further seeks punitive damages against the individual DOE Defendants.

///

24

COMPLAINT FOR DAMAGES

**PRAYER FOR RELIEF**

170. WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, including DOES 1 through 20;

    c. For a declaration that Defendants' acts, omissions, policies, practices, and conduct described herein violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution;

    d. For a declaration that Defendants' detention, restraint, use of force, and continued seizure of Plaintiff without lawful basis were unconstitutional and unlawful;

    e. For reasonable attorneys' fees pursuant to applicable law;

    f. For costs of suit incurred herein;

    g. For pre-judgment and post-judgment interest as allowed by law; and

    h. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026        CARRILLO LAW FIRM, LLP

By: _____/s/_____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury.


DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP



                                    By:    _____/s_____
                                           Luis A. Carrillo, Esq.,
                                           Attorney for Plaintiff

26

COMPLAINT FOR DAMAGES